THOMAS N. EGERY & another in equity *vs.* LEVI JOHNSON & another.

Penobscot.    Opinion October 10, 1879.

*Fraudulent conveyance.    Equity.*

The plaintiffs' debtor conveyed all his property to another for an inadequate present consideration together with a written agreement to support and maintain the grantor during his life.  In a bill in equity by prior creditors, *held,* that the conveyance could not be upheld as against them.

BILL IN EQUITY heard on bill, answers and proof.  The material allegations are in the opinion.

The defendant Johnson's answer admitted the ownership of the premises at the time alleged in the bill, and alleged—

That during 1873 or 4, Nason Brothers were engaged in lumbering operations under a contract with the plaintiffs and on the latter's land, and prior thereto borrowed $6,100 of the defendant to carry on their business and gave their notes therefor ; that on October 23, 1874, to enable Nason Brothers to complete their operations the defendant gave them his negotiable promissory note for $1,800 on one month ; that Nason Brothers cut and ran down to their mill 1,800,000 lumber, nearly all of which was sawed and shipped to the plaintiffs in Bangor ; that during the operation this defendant was assured by Nason Brothers that when plaintiffs disposed of the lumber his notes should be paid; that he had frequent conversations with plaintiffs in which they informed him that they were receiving and disposing of the lumber and would account for the proceeds ; that they held the $1,800 note and had no doubt that the proceeds of the lumber would be sufficient to pay said note and that the defendant would receive all his pay from Nason

Brothers; that confiding in the above assurance, during season 1875 he was induced to build a house on the premises mentioned in the bill, at a cost of more than $1,000; that receiving nothing from Nason Brothers, he became indebted for materials and labor upon the house; that being seventy-two years old and unable to labor, he was obliged to sell the house and land to the other defendant who paid sufficient money to discharge his indebtedness for labor and materials, amounting to $250; and in addition thereto agreed to support this defendant during life, which agreement he had faithfully fulfilled to the present date; and that he had no intention to defraud any of his creditors.

That all his creditors were soon after paid by himself or the other defendant, and he believed that the complainants had been fully paid or had in their hands sufficient property or money to pay the note of $1,800.

The other defendant's answer was substantially the same—alleging *inter alia* that one of the plaintiffs on October 29, 1875, informed him that the lumber was in this plaintiff's hands, and whatever was left after paying their bills, would be held in trust for the benefit of the defendant, Johnson, and that he had no doubt that something would be left after all his bills and claims had been paid.

The plaintiffs put in evidence a judgment for $549.50 debt, recovered on the $1,800 note, and a levy of the execution on the premises in question.

Johnson testified that he supposed the $1,800 note was paid when he conveyed, and that was all the debt he owed except bills on the house which were all paid by Keen.

*Albert A. Keen* (defendant) testified in substance:

That he had no knowledge of Johnson's indebtment to the plaintiffs when he purchased the premises; that he paid all the bills on the house, amounting to $260; that he heard of the $1,800 note three or four weeks afterward; that the plaintiff Dennett told him that he had no doubt there would be lumber enough to pay them, and what was over he would hold for Johnson's account.

That Johnson conveyed to him mortgages on three other houses

and some box boards, that he would like to sell the property mortgaged for the amount due on the mortgages ; that he had of Johnson a note against Brown & Smith for $500 which had not been paid, but was in suit.

*Wilson & Woodard,* for the plaintiff.

*D. N. Mortland,* for the defendants cited *Scudder* v. *Young,* 25 Maine, 153. 1 Story Eq. 344. 2 Black. Com. 443. 3 Washb. R. P. 321. Story Eq. Plead. 251, 252. *Dixfield* v. *Newton,* 41 Maine, 221. 1 Story Eq. 362, 363. *Salmon* v. *Bennett,* 1 Conn. 525. 1 Story Eq. 381. *Whitman* v. *Weston,* 30 Maine, 285. *Denney* v. *Gilman,* 26 Maine, 156. *Chapman* v. *Butler,* 22 Maine, 191. *Stone* v. *Bartlett,* 46 Maine, 438.

Virgin, J. The complainants allege that on, and for some time prior to October 29, 1875, they were creditors of the defendant Johnson who then owned certain real estate described and which he then conveyed, without adequate consideration, to his grandson, the other defendant, to defraud and hinder the complainants ; that they recovered a judgment against the grantor and levied their execution upon the real estate so conveyed ; and they pray that the defendants shall release all their apparent title to the land levied upon to the complainants.

Some objection is made to the form of the bill. What might have been the result had the defendants demurred, we need not now inquire.

Both defendants deny in their respective answers any intention to defraud or delay creditors, and expressly testify to the same. And we feel so uncertain of any fraudulent intent in fact, that were such intent absolutely essential to the maintenance of the bill we should dismiss it.

But the answers *inter alia* respectively allege in substance— That Johnson sold and conveyed to Keen the land in controversy together with the new house built thereon at a cost of one thousand dollars, for the sum of two hundred and sixty dollars and an agreement " to take Johnson to Keen's house and support and maintain him during the remainder of his life ; which he had faithfully done to the present time." And if this conveyance left the debtor insolvent, it was fraud in law.

Creditors have an equitable interest in the property of their respective debtors—it being the foundation of trusting them—which the law will, under certain circumstances, enforce. But the interests of a *bona fide* purchaser of a debtor's property are superior, " for the obvious reason " says Selden, J. " that the latter has not, like a mere general creditor, trusted to the personal responsibility of the debtor, but has paid the consideration upon the faith of the debtor's actual title to the specific property transferred." *Seymour* v. *Wilson*, 19 N. Y. 417. Hence the rights of a *bona fide* grantee, who has paid a full valuable consideration, are protected, though the grantor may have been actuated by a fraudulent intention.

Still a grantee is not protected when he has not paid such a consideration, though he may have acted in good faith. The two must concur. The amount of consideration is not material when the grantor is solvent, (*Usher* v. *Hardtime*, 5 Maine, 471 ; *Hapgood* v. *Fisher*, 34 Maine, 407); but when insolvent, the kind and amount of consideration do become material even in the absence of actual intent to defraud. Thus an agreement to support an insolvent grantor may be a valuable consideration, but it is not sufficient to uphold a conveyance as against prior creditors (*Rollins* v. *Mooers*, 25 Maine, 192, 199), even if there were no actual intent to defraud. *Webster* v. *Withey*, 25 Maine, 326. Persons taking a conveyance from such a grantor for such a consideration must take care that the existing debts of the grantor are paid, (*Hapgood* v. *Fisher*, 34 Maine, 407) ; and it is immaterial that the consideration comprises a present sum of money paid in addition to the agreement for support, provided the money alone were palpably inadequate. *Sidensparker* v. *Sidensparker*, 52 Maine, 481.

That Keen received a conveyance and transfer of all Johnson's remaining property is evident. He not only received a deed of the land in question, but a transfer of two mortgages and a note. His counsel in his brief speaks of the land as " the last bit of property that he (Johnson) had held in his hands" etc. ; and "that he (Keen) took a conveyance of his (Johnson's) property which was left," etc.

Thus we see that the defendants are guilty of a constructive or legal fraud, which though not originating in any actual evil design to perpetrate a positive fraud upon Johnson's creditors, yet is deemed reprehensible and is prohibited by the law since it is equally prejudicial to the creditor's interests. 1 Story's Eq. § 258.

We do not think the defendants' proposition in relation to estoppel is tenable. There is no evidence that the plaintiffs stood by and saw Johnson convey to Keen without objection.

*Bill sustained.*

*Decree as prayed for.*

APPLETON, C. J., BARROWS, DANFORTH, PETERS and SYMONDS, JJ., concurred.